**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC, )<br><br>                  Plaintiff, )<br>v.                              )<br><br>LEGO SYSTEMS, INC.,             )<br><br>                  Defendant. )<br>                                ) | Civil Action No. 2:17-cv-00086 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT LEGO SYSTEMS, INC.'S
<u>MOTION TO TRANSFER</u>**

Defendant LEGO Systems, Inc. respectfully submits this memorandum of law in support of its motion to transfer venue of this action under 28 U.S.C. § 1404(a) to the District of Connecticut.

### I.        FACTUAL BACKGROUND

Defendant LEGO Systems, Inc. ("LSI") is a Delaware corporation with its principal place of business in Enfield, Connecticut.  LSI and its related companies sell well-known construction toys.  Its witnesses with knowledge about accused conduct involving advertisements and packaging are in Connecticut or Denmark, not in Virginia.   LEGO Brand Retail, a subsidiary of LSI, operates retail stores in the Commonwealth of Virginia as well as in thirty other states.

Plaintiff, Symbology Innovations, LLC ("Symbology") is a Texas limited liability company with its principal office in Plano, Texas (Complaint ¶ 2, Dkt. No. 1)  and its manager, Leigh Rothschild, is a Florida resident.  (Exhibit 1.) Upon information and belief, Symbology

has no contact with this forum whatsoever.  Instead, it is a non-practicing entity that has brought lawsuits in various districts across the United States, including Western District of Wisconsin, Eastern District of Texas, Northern District of Illinois, Middle and Southern Districts of Florida, District of New Jersey, and now, Eastern District of Virginia. (Exhibit 2.)  On January 3, 2017, Symbology filed this complaint of patent infringement against LSI with respect to U.S. Patent Nos. 7,992,773; 8,424,752; 8,936,369; and 8,936,190 (collectively, the "Asserted Patents"), which generally concern a method, computer application, and management application for detecting symbology associated with an object or image and subsequently processing[1] the symbology.  *See id*. ¶¶ 9–28.  In other words, the putative invention claimed by the Asserted Patents is related to detecting and processing symbology, not placing symbology on advertisements or packaging.

Nowhere in the pleading does Symbology accuse LSI of making, selling, or offering for sale any computer application, management application, or software product that infringes the Asserted Patents, much less doing so in the Eastern District of Virginia.  At most, Symbology appears to allege[2] that LSI directly infringes the Asserted Patents by "using and/or incorporating Quick Response Codes ("QR codes") on printed media (*e.g.*, advertisements, packaging) associated with selected products (*e.g.*, Lego Products) in a manner covered by one or more claims of the [Asserted Patents.]"  *Id.* at ¶¶ 32, 50, 68, 86; *see also* Complaint Exhibits E, F, G, H.  It follows this unspecific allegation with "[o]n information and belief, Defendant has, <u>at least</u>

---

[1] The processing entails decoding the symbology to obtain a decode string; sending the string to one or more visual detection applications, receiving a first amount of information therefrom, again sending the string to a remote server, receiving a second amount of information therefrom, combining the first and second amount of information to obtain cumulative information, and displaying cumulative information associated with the object or image.

[2] LSI describes these allegations here without waiving its rights to move to dismiss under Fed. R. Civ. P. 12(b)(6).  *See* Motion to Dismiss (Dkt. No. 16.)

through internal testing, used or incorporated QR codes in advertisements and packaging." *Id.* at 34–36, 52–54, 70–72, 88–90 (emphasis added).  Symbology also appears to allege that LSI indirectly infringes the Asserted Patents, merely because it "allows customers to scan QR codes imprinted on the packaging of Defendant's products." *Id.* at ¶¶ 38–40, 56–58, 74–76, 92–94.[3]

As noted above and in the Complaint, the Asserted Patents do not concern "incorporating" QR codes on any medium; they strictly claim "using" QR codes by detecting and processing. LSI does not make or sell any product that scans or processes QR codes.  It also does not generate or process QR codes on advertisements or packaging.  Upon information and belief, third parties, such as BeQRious, allow people to do so.  Even assuming, *arguendo*, that Symbology's speculative allegation that LSI internally tested QR codes occurred, it would have occurred in Denmark (or possibly Enfield, Connecticut), where its packaging and marketing personnel reside.  In any event, no accused conduct occurred in Virginia.  In summary, no parties, no witnesses, no evidence, and no allegedly infringing conduct occurred in the Eastern District of Virginia.  Because Symbology could have brought this action in the District of Connecticut, where the interest of justice and convenience of the parties and witnesses would be better served, LSI respectfully requests the Court transfer this action to the District of Connecticut.

## II.    DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Thus, courts have sound discretion to transfer an action to another district and, in

---

[3] For the latter three patents, Symbology alleges indirect infringement by "Defendant allows consumers to scan QR codes to be imprinted on Defendant's products . . . ."

doing so, consider "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). [4]

### A. The Claims Could Have Been Brought in the District of Connecticut

This action could have been brought in the District of Connecticut. As this case involves federal questions arising under 35 U.S.C. § 271 *et seq.*, the District Court for the District of Connecticut has subject matter jurisdiction. Complaint at ¶ 4. Furthermore, the District Court for the District of Connecticut has personal jurisdiction over LSI, which resides and transacts business in Enfield, Connecticut.[5] *Id.* ¶ 3. Accordingly, venue is proper in the District of Connecticut under 28 U.S.C. § 1400(b), which states "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[6] Therefore, this action could have been brought in the District of Connecticut.

### B. The Interest of Justice and Convenience of the Parties and Witnesses Justify Transfer to the District of Connecticut

If the above threshold issue for a venue transfer is satisfied, courts in the Fourth Circuit balance additional categories of factors, including "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Heinz Kettler GmbH & Co. v. Razor USA, LLC*, Case No. 1:10cv708, 2010 U.S. Dist. LEXIS

---

[4] Issues relating to venue in patent cases are governed by the regional circuit law. *See Storage Tech. Corp. v. Cisco Sys.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

[5] Symbology's connection with the District of Connecticut is irrelevant for personal jurisdiction inquiries. *See In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

[6] LSI reserves its rights to challenge venue under § 1391(c). *See In re TC Heartland LLC*, 821 F.3d 1338 (Fed. Cir. 2016), *cert. granted*, 85 U.S.L.W. 3288 (U.S. Dec. 14, 2016) (No. 16-341).

119954, at *16 (E.D. Va. Nov. 5, 2010).  Here, the factors weigh in favor of a transfer to the District of Connecticut.

**1)  The Plaintiff's choice of forum**

While the plaintiff's choice of forum is significant, it "is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum."  *Koh*, 250 F. Supp. 2d at 633; s*ee also Ion Bean Applications S.A., v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000) ("where the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, that plaintiff's choice loses its [] status in the court's consideration.").  Symbology selected the Eastern District of Virginia, but it does not appear to have any connection with the District or the Commonwealth.  Symbology is a Texas limited liability company with its principal place of business in Plano, Texas.  Its members and manager are not Virginia residents.  Symbology has brought suits in many other districts across the country, including the Western District of Wisconsin, Eastern District of Texas, Northern District of Illinois, Middle and Southern Districts of Florida, and District of New Jersey, but, until this action was filed, not in the Eastern District of Virginia.[7]  (Exhibit 2.)

In addition, Symbology's claims bear little or no relation to this District.  LSI's conduct accused of infringing the Asserted Patents is detecting and processing QR codes at least in internal testing. Even assuming, *arguendo*, that such activity occurred, it would not have taken place in the Eastern District of Virginia.  *See* Quaglia Decl., ¶ 4.  Witnesses with knowledge of testing QR codes, or the lack thereof, on advertisements and packaging would be in Enfield,

---

[7] Symbology appears to bring batches of lawsuits—filing four or five lawsuits against different, unrelated defendants in various and, like this one, random districts across the country. *See, e.g.*, Exhibit 2 (a sampling of the first page of docket sheets from these litigations).

Connecticut or Denmark.  While LSI sells products and operates stores in this District, it bears repeating that LSI's products do not scan or detect QR codes and, thus, cannot infringe the Asserted Patents.  Furthermore, courts have not given substantial weight to the plaintiff's choice of forum when the only connection to the claim is sales activities.  *See Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) ("Federal courts are not solicitous of plaintiffs claiming substantial weight for their forum choice where the connection with the forum is limited to sales activity without more.") (internal quotations omitted).  Because there is no significant contact between the Eastern District of Virginia and Symbology or its claims (indeed, there is none), Plaintiff's choice of forum should be given little, if any, weight.

**2)  The convenience of witnesses and parties**

For the second and third categories, courts consider, *inter alia*, "the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692–93 (E.D. Va. 2007) (internal quotations omitted).  Courts then weigh the "convenience to the parties and witnesses in litigating in either venue." *Koh*, 250 F. Supp. 2d at 636.  As noted above, QR codes that Symbology alleges to exist on LSI's advertisements or packaging would be generated from and processed by a third party company, such as BeQRious.  Upon information and belief, BeQRious is a company based in New York City.  (Exhibit 3, http://beqrioustracker.com/about-us/.) Consequently, any third party witness from BeQRious is more likely to be available in Connecticut than Virginia, potentially through the subpoena power of the District Courts for the District of Connecticut.[8]  LSI employees with knowledge about marketing and internal testing of QR codes, or the lack thereof,  would be located in Connecticut, if not Denmark.  *See* Quaglia

---

[8] New York City is 60–80 miles from the Bridgeport and New Haven courthouses of the District of Connecticut.

Decl., ¶¶ 4, 6.  Relatedly, documentary and other tangible evidence regarding the alleged infringement, such as previous products, catalogs, or other marketing material, are more likely to be available in Connecticut.  As a result, transferring this case to the District of Connecticut would be substantially more convenient to the third party witnesses and to LSI.

In addition, Symbology would not be significantly inconvenienced by the transfer.  While Symbology is not based in Connecticut, it is also not based in Virginia.  Upon information and belief, its members and employees, if any, are likely in Texas, and its manager and inventor of the Asserted Patents, Leigh Rothschild, is in Florida.  Whether the case proceeds in the Eastern District of Virginia or the District of Connecticut, Symbology's representatives and witnesses will have to travel.  Symbology and its witnesses evidently do so for litigation purposes frequently, as it files suits all over the country—most recently in New Jersey.  Furthermore, documentary or other tangible evidence regarding the patent validity and enforcement are presumably available in Texas, Florida, or in public, not in Virginia.  Because the convenience of witnesses and parties would be great in Connecticut and neutral at best in Virginia, the second and third factors favor a transfer.

### 3) The interest of justice

Finally, courts examine various factors unrelated to witness and party convenience, including "the pendency of a related action, the court's familiarity with applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." A*cterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 940 (E.D. Va. 2001).  Because this case involves a federal question, all district courts are presumed to be equally familiar with applicable law.  *See  id*.  Docket conditions, while relevant, are "minor consideration" in this District.  *Id*;  *see also Intercarrier*

*Communications, LLC v. Glympse, Inc.*, No. 3:12-CV-767, 2013 U.S. Dist. LEXIS 113572, 2013 WL 4083318, at *6 (E.D. Va. Aug. 12, 2013) ("In other words, this Court should not allow itself to be overrun by a horde of Visigoths who simply want quick results.")

This case does not involve any basis nor a "local controversy" of the Commonwealth of Virginia.  Again, Symbology accuses LSI of infringing the Asserted Patents for its potential internal testing of, and inducement by "allowing," detection and processing of QR codes.  These alleged activities did not take place in Virginia.  Even if sales and distribution of material with imprinted QR codes were somehow an infringement, which LSI vigorously refutes, they were certainly not unique to Virginia and, in fact, would have been centered in Connecticut.  *See Jaffé v. LSI Corp.*, 874 F. Supp. 2d 499, 506 (E.D. Va. 2012) (no local interest where no manufacturing of infringing product occurred in district and any alleged infringement was not unique to EDVA).  Because the interest of justice supports adjudication of this case in the District of Connecticut, the last factor favors a transfer.

## III.    CONCLUSION

For the foregoing reasons, Defendant LSI respectfully requests that this Motion to Transfer be granted and this case be transferred to the District of Connecticut.

LEGO SYSTEMS, INC.


By_____/s/_____
             Of Counsel


Dabney J. Carr, IV, VSB #28679
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

Elizabeth A. Alquist (*admitted pro hac vice*)
Eric J. TeVelde (*admitted pro hac vice*)
Woo Sin Sean Park (*admitted pro hac vice*)
Day Pitney LLP
242 Trumbull Street
Hartford CT 06103-1212
Telephone: (860) 275 0100
Facsimile: (860) 748 4437
ealquist@daypitney.com
etevelde@daypitney.com
wpark@daypitney.com

***Counsel for Lego Systems, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April , 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Steven War, VSB No. 45048
>**McNEELY, HARE & WAR LLP**
>5335 Wisconsin Ave., NW, Suite 440
>Washington, D.C. 20015
>Telephone: (202) 536-5877
>Facsimile: (202) 478-1813
>steve@miplaw.com
>
>*Counsel for Symbology Innovations, LLC*

>/s/  Dabney J. Carr, IV
>Dabney J. Carr, IV (VSB No. 28679)
>**TROUTMAN SANDERS** LLP
>1001 Haxall Point
>Richmond, VA 23219
>Telephone:  (804) 697-1200
>Facsimile:  (804) 697-1339
>dabney.carr@troutmansanders.com
>*Counsel for Defendants*

-10-