**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS, LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 2:17-cv-00086** |
| **v.** | |
| **LEGO SYSTEMS, INC.** | |
| **Defendant.** | |

**PLAINTIFFS' OPPOSITION TO**
**LEGO SYSTEMS, INC.'s MOTION TO DISMISS PURSUANT TO F.R.C.P.**
**12(b)(6)**

i

# TABLE OF CONTENTS

<u>Page</u>

I.     RELEVANT BACKGROUND ……………..………………………………………..1

II.    INTRODUCTION …………………………………………………………...3

III.   LEGAL STANDARD …………………………………………………………4

IV.   ARGUMENT ……………………………………………………………...6

    A.  Symbology's Direct Infringement Allegations are Factually
        Supported and Plausible …………………………………………….………6

       1.  Accused Products Each Display a QR Code ……………………….………7

       2.  On Information & Belief, LSI's Direct Infringement Occurs
          in the United States …………………………………………………7

       3.  Symbology's Representative Claim Charts Provide Sufficient
          Particularity Illustrating Symbology's Infringement Contentions ………………….8

       4.  The cases cited in LSI's Motion to Dismiss are Inapposite to the
          Symbology's FAC …………………………………………………..8


    B.  Symbology's Indirect Infringement Allegations Are Factually
        Supported and Plausible …………………………………………….………11

       1.  Service of the Complaint Provides Knowledge of the Patent
          for Inducement ………………………………………………….………12

       2.  LSI Knowingly Induced Infringement and Had Specific Intent
          to Encourage Others to Infringe the Patents …………………….………13

       3.  LSI's Customers That Detected and Processed the QR Codes
          Are Direct Infringers …………………………………………………14

V.    CONCLUSION ………………………………………………………..15

## TABLE OF CONTENTS

Cases                                                                                                          Page(s)

*Adiscov, LLC v. Autonomy Corp.*,
   762 F. Supp. 2d 826 (E.D. Va. 2011) …………………………………………………...5, 7, 9

*Allergan, Inc. v. Alcon Labs., Inc.,*
   324 F.3d 1322 (Fed. Cir. 2003) ……………………….…………………………….…12

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
   841 F.3d 1288 (Fed. Cir. 2016) …………………………………………………...….5

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
   2016 WL 1253533 (E.D. Va. 2016) …………………….………………………….… 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) …………………………………………………………………..4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) …………………………………………………………………..4, 5

*Bonutti Skeletal Innovations, LLC v. Globus Medical, Inc.*
   2015 WL 3755223 (E.D. Pa. 2015) …………………………………………………12

*CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.,*
   2017 WL 536833 (E.D. Va. Feb. 9, 2017) ………………………………………………5

*CertusView Techs., LLC v. S & N Locating Servs., LLC,*
   107 F. Supp. 3d 500 (E.D. Va. 2015) …………………………………………...….5

*Classen Immunotherapies, Inc. v. Biogen IDEC,*
   2012 WL 1963412 (D. Md. 2012),
   *adhered to on reconsideration*, 2012 WL 3264941 (D. Md. 2012) …………………………13

*Commill USA, LLC v. Cisco Systems, Inc.,*
   135 S. Ct. 1920 (2015) …………………………………………………………………12

*DSU Med. Corp. v. JMS Co.,*
   471 F.3d 1293 (Fed. Cir. 2006) ……………………………………………………...11, 12

*Edwards v. City of Goldsboro,*
   178 F.3d 231 (4th Cir. 1999) ………………………….…………………………….…5

*E.I. du Pont de Nemours & Co. v. Kolon-Indus., Inc.,*
   637 F.3d 435 (4th Cir. 2011) …………………………………………………………..5-6

*Global-Tech Appliances, Inc. v. SEB S.A.,*
683 U.S. 754 (2011) …………………………………………………………....11-12, 14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
681 F.3d 1323 (Fed. Cir. 2012) ……………………………………………………12

*Intel Corp. v. Future Link Sys., LLC.*
2015 WL 649294 (D. Del. 2015) …………………………………………………10, 11

*Joy Techs., Inc. v. Flakt, Inc.,*
6 F.3d 770 (Fed. Cir. 1993) ……………………………………………………...10

*Macronic Int'l Co. v. Spansion Inc.,*
4 F. Supp. 3d 797 (E.D. Va 2014) …………………………………….…………...8-9

*Memory Integrity, LLC v. Intel Corp.,*
144 F. Supp. 3d 1185 (D. Or. 2015) ……………………………………………….…12

*Nat'l Fair Hous. All., Inc. v. Hunt Investments, LLC,*
2015 WL 4362864 (E.D. Va. 2015) ………………………………………………….2

*Nielson Co. (US), LLC v. comScore, Inc.,*
819 F. Supp. 2d 589 (E.D. Va. 2011) ……………………………………….……11

*Orbcomm Inc. v. CalAmp Corp.,*
2016 WL 3965205 (E.D. Va. 2016)
on reconsideration in part 2016 WL 6126941 (E.D. Va. 2016) ……………………4-5, 9-10

*Paone v. Broadcom Corp.,*
2015 WL 4988279 (E.D. N. Y. 2015) …………………………………………12, 14

*PB & J Software, LLC v. Acronis, Inc.,*
897 F. Supp. 2d 815 (E.D. Mo. 2012) ………………………………………..…11

*Peschke Map Techs. LLC v. Pennsylvania Real Estate Inv. Trust,*
2016 WL 1031297 (E.D. Va, 2016) …………………………………………………5

*Script Sec. Solutions, LLC v. Amazon.com, Inc.,*
170 F. Supp. 3d 928 (E.D. Tex. 2016) …………………………………………13

*Smart Wearable Techs. Inc. v. Fitbit, Inc.,*
2017 WL 1314195 (W.D. Va April 6, 2017) …………………………………..13

*Takeda Pharms. U.S.A., Inc. v. West Ward Pharm. Corp.,*
785 F.3d 625 (Fed. Cir. 2015) …………………………………………………13

*Turner v. Richmond Pub. Sch.,*
  2017 WL 1179162 (E.D. Va. Mar. 28, 2017) ……………………………………………..…….2

*Vita-Mix Corp. v. Basic Holding, Inc.,*
  581 F.3d 1317 (Fed. Cir. 2009) …………………………………………………………..11, 13

<u>Rules</u>

Fed. R. Civ. P. 8(a) …………………………………………………………………..4, 5, 6

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………1, 5

Fed. R. Civ. P. 15(a)(1)(B) ………………………………………………………………..2

Plaintiff Symbology Innovations, LLC ("Symbology") respectfully submits this Opposition to Defendant Lego Systems, Inc.'s ("LSI") Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (Dkt. No. 16) ("LSI's Motion to Dismiss").  For the reasons set forth herein, LSI's Motion to Dismiss should be denied.  Alternatively, if the Court agrees with Defendant LSI that the operative complaint is lacking in some respect, Symbology requests permission to file a Second Amended Complaint to cure any perceived deficiencies.

## I.   RELEVANT BACKGROUND

On January 3, 2017, Symbology filed a complaint in this District alleging direct and indirect patent infringement of 57 claims of four patents against LSI.  The inventions identified in the 57 claims of the four patents are *not* directed simply at placing symbology on advertisements or packaging.  Rather, the inventions of the four patents are directed to "[s]ystems and methods . . . for enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected."  U.S. Patent No. 7,992,773, Dkt. No. 1, Ex. A, Abstract. On February 9, 2017, LSI was served with a copy of the complaint, copies of each of the asserted patents, and a representative claim chart for each of the Asserted Patents.  Dkt. No. 6.

On April 3, 2017, LSI filed its Motion to Dismiss ("LSI's Motion to Dismiss") (Dkt. No. 16), supporting memorandum ("LSI's Mem.") (Dkt. No. 17) and various exhibits.  LSI's Motion to Dismiss was filed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.  LSI alleges that, the <u>direct</u> infringement allegations in Symbology's initial complaint fails to: (1) identify specific products (LSI's Mem. at 1, Dkt. No. 17); (2) allege that LSI's direct infringement occurs in the United States (*Id.*); and (3) "link any accused product with the actual elements of the Asserted Claims" (*Id.* at 2).  LSI alleges that, the induced infringement allegations

1

in Symbology's initial complaint fails to: (1) allege LSI's knowledge of the Asserted Patents (*Id.*); (2) "that LSI actively and knowingly induced another's infringement" (*Id.* at 3); and (3) allege the existence of direct infringers (*Id.*).

On April 17, 2017, as a matter of course under Fed. R. Civ. P. 15(a)(1)(B), Symbology filed its first amended complaint ("FAC").  Symbology's FAC clarifies Symbology's direct infringement allegations by: (1) further identifying the accused products; (2) alleging that LSI's direct infringement occurs in the United States; and (3) providing additional information to link the accused products with the representative Asserted Claims.  In addition, Symbology's FAC clarifies Symbology's induced infringement allegations by: (1) stating that LSI had knowledge of the asserted patents at least as early as the service of the complaint on February 9, 2017; (2) alleging that LSI actively and knowingly induces others to infringe the Asserted Patents; and (3) alleging the existence of at least one direct infringer.  In light of the filing of Symbology's FAC, LSI's Motion to Dismiss should be denied as moot.  *Nat'l Fair Hous. All., Inc. v. Hunt Investments, LLC*, 2015 WL 4362864, at *2 (E.D. Va. 2015) ("Those Motions to Dismiss were denied as moot after Plaintiffs filed their Amended Complaint."); *Turner v. Richmond Pub. Sch.*, 2017 WL 1179162, at *5 (E.D. Va. Mar. 28, 2017).

## II. INTRODUCTION

LSI purposely displays Quick Response Codes ("QR Codes") on the packaging and/or on printed media associated with a number of LSI's products.  Any LSI product which includes QR Codes on the packaging and/or on the associated printed media are accused products and identified as Selected Products in both the initial Complaint and the First Amended Complaint ("FAC").  These QR Codes did not appear on the packaging and/or associated printed media magically.  The QR Codes did not wish themselves into existence.  Rather, steps were taken by LSI, or at LSI's request, for the QR Codes to be displayed on the packaging and/or associated printed media.  Moreover, LSI has expended, and continues to expend, resources (either time, money, etc.) on maintaining the infrastructure necessary to ensure that when a QR Code is scanned by a portable electronic device, relevant information is sent to, and displayed by, that portable electronic device.  LSI includes these QR Codes on the packaging of the selected products for the sole purpose of permitting potential customers or customers to use their portable device (such as a smart phone) to scan the QR Codes and to obtain additional information on LSI's selected product.

Symbology's direct infringement claims against LSI are targeted *inter alia* at activities taken by LSI and its employees to, at least, test the functionality and usefulness of the QR Codes displayed on the packaging/print media of the selected products.  A reputable company such as LSI would never display, offer for sale, or sell products in packaging that includes QR Codes if those QR Codes had not been tested to ensure they operate as expected, *i.e.*, allow relevant information to be displayed after the QR Code is detected and processed.

Symbology's indirect infringement claims are targeted at activities taken by LSI to induce others to infringe the asserted claims.  The only reason LSI displays the QR Codes on the packaging/printed media of the selected products is to permit others to obtain additional information on the Selected Products themselves.  LSI encourages others to infringe the asserted

patents by: (1) displaying a QR Code on Selected Products, and (2) inviting others to scan the QR Codes with messages such as "PLAY THE FREE LEGO CITY MY CITY GAME ONINE" in the adjoining space next to the QR Code.

LSI's Motion to Dismiss (Dkt. No. 16) should be denied because: (1) it has been rendered moot by Symbology's filing of its First Amended Complaint, (2) the FAC includes sufficient factual matter to state a claim that is plausible on its face, (3) the FAC gives LSI notice of the accused products and the subject of the suit and (4) the FAC meets the pleadings requirements of *Iqbal* and *Twombly*.

### III. LEGAL STANDARD

Fed. R. Civ. P. 8(a) requires that a "pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ."  The Supreme Court has interpreted the pleading standard of Rule 8 *not* to require "detailed factual allegations," but to require "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court went on to hold "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Supreme Court stated that the "plausibility standard" is not a "probability requirement," but it must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  When a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  "The Federal Rules of Civil Procedure requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Orbcomm Inc. v. CalAmp Corp.*, 2016 WL 3965205, at *2 (E.D. Va. 2016) *on reconsideration in*

4

*part* 2016 WL 6126941 (E.D. Va. 2016) (internal quotations omitted) (*citing Twombly*, 550 U.S. at 555).  A complaint for patent infringement must "provide sufficient detail about the defendants and their products such that the defendants would be on notice as to which products or services are the subject of the suit." *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 832 (E.D. Va. 2011). This "ensures that the accused infringer has sufficient knowledge of the facts to enable it to answer the complaint and defend itself." *Peschke Map Techs. LLC v. Pennsylvania Real Estate Inv. Trust*, 2016 WL 1031297, at *1 (E.D. Va. 2016) (citation omitted).

LSI's Motion to Dismiss (Dkt. No. 16) is based on LSI's allegation that Symbology's January 3, 2017 complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 2017 WL 536833, at *1 (E.D. Va. Feb. 9, 2017) (citations omitted).  "[A] motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2)[,] which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Peschke Map Techs.* 2016 WL 1031297, at *1.  In ruling on LSI's Motion to Dismiss, this Court must assume all of the factual allegations contained in the complaint are true and the Court must draw all reasonable factual inferences in favor of Symbology. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed. Cir. 2016), *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "Accordingly, 'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 107 F. Supp. 3d 500, 505 (E.D. Va. 2015) (citing *Twombly*, 550 U.S. at 555).)  A complaint may survive a 12(b)(6) motion even if recovery is unlikely. *Id.* "A court must consider 'the complaint in its entirety, as well as documents attached or incorporated into the complaint.'" *E.I. du Pont de*

5

*Nemours & Co. v. Kolon-Indus., Inc.*, 637 F.3d 435, 448 (4ᵗʰ Cir. 2011).

## IV. ARGUMENT

Simply stated, the direct and indirect infringement claims included in Symbology's First Amended Complaint are supported by sufficient factual matter, that when accepted as true, state a claim for direct and indirect patent infringement which is plausible on its face.  First, in light of Symbology's filing of a First Amended Complaint, this Court should deny LSI's Motion to Dismiss as moot.  Second, even if this Court considers LSI's Motion to Dismiss, which it shouldn't, this Court should still deny LSI's Motion to Dismiss (Dkt. No. 16) because Symbology's First Amended Complaint meets the requirements of Fed. R. Civ. P. 8(a) and clearly provides LSI with notice of the accused products and Symbology's infringement allegations.

### A. Symbology's Direct Infringement Allegations are Factually Supported and Plausible

As previously stated, the inventions of the four patents are directed to "[s]ystems and methods . . . for enabling a portable electronic device to retrieve information about an object when the object's symbology, . . . is detected."  U.S. Patent No. 7,992,773, Dkt. No. 1, Exhibit A, Abstract.  Contrary to LSI's argument, Symbology is not accusing LSI of direct infringement of the asserted claims for "plac[ing] QR codes on unidentified products in a manner that is somehow alleged to infringe the Asserted Claim."  LSI's Mem. at 5, Dkt. No. 17.  Rather, Symbology is accusing LSI of direct infringement of the asserted claims for using a portable electronic device to retrieve information about an object in accordance with the asserted claims when the object's symbology [a QR Code] is detected.  On information and belief, LSI practices the asserted method claims when scanning the QR Codes on selected products for testing the QR Codes such as at its retail stores in Virginia.

1.   Accused Products Each Display a QR Code

Symbology has clearly identified each of the accused products (Selected Products) as products which display a QR Code on its packaging and/or its associated printed media. Symbology's FAC, ¶ 30, Dkt. No. 22.  This identification clearly defines "a general class of products".  *Adiscov,* 762 F. Supp. at 831 ("In particular, the court found that the '[p]laintiffs were obligated to specify, at a minimum, *a general class of products* or a general identification of the infringing methods.'") (emphasis added) (citation omitted).  If the packaging and/or its associated print media displays a QR code, the product is included in the definition of "selected product" and the product is accused of infringement.  If neither the product's packaging nor its associated print media displays a QR Code, the product is not included in the definition of "selected product" and the product is not accused of infringement.  Examples of selected products include, but are not limited to, LEGO city model number 60130 Prison Island and LEGO City mode 60110 Fire Station.

2.   On Information & Belief, LSI's Direct Infringement Occurs in the United States

Symbology's FAC includes allegations, made on information and belief, that LSI employees in Connecticut and/or Virginia have (or have arranged for others) tested, detected, and processed QR Codes imprinted on LSI's advertisements and/or packaging and viewed the subsequently displayed information.  Symbology's FAC, ¶ 39, Dkt. No. 22.  In addition, Symbology's FAC includes allegations, made on information and belief, that employees at LSI's three retail stores in Virginia have tested, detected, and processed QR Codes imprinted on LSI's advertisements and/or packaging.  *Id.* at ¶ 40.  Accordingly, on information and belief, Symbology believes that LSI has directly infringed the asserted claims in the United States.

3.   Symbology's Representative Claim Charts Provide Sufficient Particularity Illustrating Symbology's Infringement Contentions

To date, Symbology has not had the opportunity to obtain discovery from LSI in order to identify the types of portable electronic devices, (and the software contained therein) that LSI has used to detect and process QR Codes[1] thereby directly infringing the asserted claims.  This information is only available to LSI (or its agents), and unavailable to Symbology until discovery has begun.  Until that specific information is obtained from LSI, Symbology has generated claim charts based on well-known and widely-used third party software which is used to detect and process QR Codes.  Symbology's FAC, Exs. A, B, C, D, Dkt. No. 22-1, 22-2,22-3, 22-4.  The information contained in the claim charts included with the initial complaint and the FAC are based on detecting symbology included in the QR Code displayed on one of LSI's Selected Products, processing that symbology as described in each of the representative claims, and displaying the cumulative information on a display device that is associated with the portable electronic device used to detect the symbology initially.  On information and belief, any portable electronic device used by LSI in its internal testing would detect and process the symbology in the same way although the LSI device may use software from a different third-party to detect and process the symbology.

4.   The cases cited in LSI's Motion to Dismiss are Inapposite to the Symbology's FAC.

While LSI attempts to argue that "Courts in this District have dismissed similar complaints for similar failures" (LSI's Memo. at 6, Dkt. No. 17), not one of the cases referenced by LSI has the same factual pattern as is currently before this Court.

In *Macronic Int'l Co. v. Spansion Inc.*, the District Court in Richmond ordered

---

[1] Symbology reserves the right to disagree with LSI's generalization of the invention contained on pages 9-13 of LSI's Mem. (Dkt. No. 17) as necessary at a later time in this lawsuit.  This lawsuit involves 57 asserted claims spread out between four different patents.

*Macronic Int'l Co.* to identify the asserted claims specifically, and the elements infringed, and how the product infringes those elements in its First Amended Complaint.  4 F. Supp. 3d 797, 799 (E.D. Va 2014).  That court found that: (1) the plaintiff failed to allege what was literally infringed and infringed under the Doctrine of Equivalents, (2) the plaintiff failed to allege how the accused products practice the asserted claims, and (3) the First Amended Complaint merely parroted back the claim language.  *Id.* at 804.  *Macronic's* First Amended Complaint did not include numerous claim charts as was included in both the Initial Complaint and the FAC in this case.  In its operative complaint, Symbology clearly identifies which accused products literally infringe the asserted patents, provided claim charts which show how the accused products practice the asserted claims, and the FAC links the claims with the accused products rather than merely parroting back the claim language.  Despite these numerous failings in *Macronic's* First Amended Complaint, that court gave the plaintiff leave to file a Second Amended Complaint (as opposed to dismissing the complaint outright). *Id.* at 804.

In *Adiscov,*, this Court found that *Adiscov* failed: (1) to identify the specific accused product or service; (2) to show how the patent-in-suit was infringed, and (3) meet the plausibility test.  762 F. Supp. 2d 826, 830 (E.D. Va. 2011).  *Adiscov's* First Amended Complaint did not include numerous claim charts as was included in both the Initial Complaint and the FAC in this case.  Symbology's operative pleading specifically identifies the accused products, how the asserted claims are infringed by the accused products and Symbology's complaint and exhibits meet the plausibility test.

In *Orbcomm,* the District Court in Richmond held that *Orbcomm's* compliant meet the requirements of Fed. R. Civ. P. 8(a) because it: (1) specifically identified the claims asserted

directly, indirectly, contributorily, and induced; (2) specified the accused products; (3) compared

the accused systems to the claims and (4) demonstrated a plausible entitlement to relief.  2016 WL

3965205, at *8, (E.D. Va. 2016).  In that case, the court held that "[p]atent litigation involves

complex subject matter.  This Court is not convinced that the level of granular particularity

suggested by CalAmp [claim charts] is necessary to survive initial Rule 12(b)(6) scrutiny.  *Id.*

While claim charts are not required to meet Rule 8(a), Symbology has included representative

claims charts in both its Initial Complaint and its FAC.  In other words, Symbology included

everything that the *Orbcomm* did, and in addition, Symbology included claim charts detailing

Symbology' infringement contentions.

In *Asghari-Kamrani v. United Servs. Auto. Ass'n*, this Court held that the plaintiff failed to:

(1) link features of the accused websites with the patent, (2) sufficiently identify "how each

allegedly infringing feature of the [accused] website infringes the patent, and (3) the accused

websites infringe each of the asserted claims.  2016 WL 1253533, *3-*4 (E.D. Va. 2016).  ).

Symbology included representative claims charts in both its Initial Complaint and the FAC in

this case to ensure the link between the accused products and the representative claims was clearly

identified.  None of the deficiencies identified by the *Asghari-Kamrani* court are present in the

matter at bar.

Finally, LSI misconstrues the holding in *Intel Corp. v. Future Link Sys., LLC*. Dkt. No. 17,

at 11.  Note 11 of this decision states "[u]nlike with a product claim, making or selling a product

that is capable of infringing does not infringe a method claim." 2015 WL 649294, *7, n.11 (D. Del.

2015) (citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)).  LSI attempts to use

this note to support its pronouncement that "[a]ttaching a QR Code to product packaging is not

enough."  Apparently, LSI is attempting to argue that attaching a QR Code to product packaging is

not enough to infringe the asserted claims in this case.  Symbology's direct infringement

allegations are not however based on LSI's inclusion of the QR Code on the packages of the selected products. Rather, Symbology's direct infringement allegations are based on LSI practicing of each element of the asserted claims when LSI detects and processes the symbology contained within the QR Code on LSI's Selected Products. As the *Intel Corp.* Court correctly stated "[u]nlike with the 'arrangement' claims, only if Intel itself performed every step of these three method claims would Intel be responsible for direct infringement of the claims." *Id.*, at *7. Similarly, since LSI performs every step of, for example, the asserted method claims, LSI is responsible for direct infringement of the asserted method claims.

### B. Symbology's Indirect Infringement Allegations Are Factually Supported and Plausible

35 U.S.C. § 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "Inducement [generally] requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part). "The Federal Circuit requires that complaints for induced infringement 'contain facts plausibly showing that [defendants] specifically intended [others] to infringe the [patent-in-suit] and knew that [others'] acts constituted infringement." *PB & J Software, LLC v. Acronis, Inc.*, 897 F. Supp. 2d 815, 820-21 (E.D. Mo. 2012) (alternations in original). In addition, inducement requires the plaintiff plead the direct infringement by another party. *Nielson Co. (US), LLC v. comScore, Inc.*, 819 F. Supp. 2d 589, 593 (E.D. Va. 2011).

However, other courts have questioned the "knowingly" requirement for induced infringement. Some courts have found that "willful blindness" is sufficient. For example, relying on the Supreme Court's decisions in *Global-Tech Appliances, Inc. v. SEB S.A.*, (683 U.S. 754

(2011)) and *Commill USA, LLC v. Cisco Systems, Inc.*, (135 S. Ct. 1920 (2015)) the *Bonutti Skeletal Innovations, LLC v. Globus Medical Inc.* court held, that a claim for induced infringement requires:

> (1) with knowledge of or *willful blindness* to the existence of the patent-in-suit; (2) the defendant engaged in affirmative acts to induce (*e.g.,* by persuading, leading, or influencing) a third party to perform acts that; (3) the defendant knew constituted infringement of the patent-in-suit (*or was willfully blind to that fact*); (4) with the specific intent to cause such infringement; and which (5) resulted in the third party directly infringing the patent-at-issue.

2015 WL 3755223, at *5 (E.D. Pa. 2015) (emphasis added) .  Accordingly, pleading "willful blindness" rather than "knowingly" is sufficient to support a claim for induced infringement.

Other courts have held that inducement may be found when the defendant "should know" (rather than know) that his actions will induce infringement.  *Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1336 (Fed. Cir. 2003).

Specific intent to encourage another's infringement of the patent required for a claim of inducement may be inferred, for examaple by general statements in advertisements.  *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1194 (D. Or. 2015).  Alternatively, continuing to sell an allegedly infringing product, after obtaining knowledge of the existence of the patent also gives rise to an inference of a specific intent in the pleadings stage of a case.  *See, Paone v. Broadcom Corp.*, 2015 WL 4988279, at *13 (E.D. N. Y. 2015).  Specific intent may be coupled with action.  *DSU Medical Corp., v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).  Finally, the facts must be considered in the context of how they occurred in order to determine if it is reasonable to infer intent from statements or conduct.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012).

1.   Service of the Complaint Provides Knowledge of the Patent for Inducement

LSI misleadingly argues that "Symbology does not allege, nor could it, that LSI either had

knowledge of the Asserted Patents or has the requisite specific intent to actively aid and abet another's infringement." LSI's Mem. at 14, Dkt. No. 17. Symbology does not need to allege that LSI knew of the asserted patents prior to the filing of this lawsuit. Rather, knowledge of the patent through service of the complaint is sufficient to support a claim of induced infringement. *Smart Wearable Techs. Inc. v. Fitbit, Inc.*, 2017 WL 1314195, at *2 (W.D. Va April 6, 2017), see *Script Sec. Solutions, LLC v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) (collecting cases). When this occurs, induced infringement begins on the date the complaint was served on the Defendant. *Id.* In its initial complaint, Symbology specifically stated that Defendant LSI had knowledge of its infringement of the asserted patents (and hence of the patents) *at least as of the service of the compliant*. Complaint, ¶¶ 31, 49, 67, and 85, Dkt. No. 1 (emphasis added). Symbology stated similar facts in its First Amended Complaint. Symbology's FAC, ¶¶ 43, 59, 68, 84, 93, 109, 118, 134, Dkt. No. 22.

> 2. LSI Knowingly Induced Infringement and Had Specific Intent to Encourage Others to Infringe the Patents

"Specific intent requires 'that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringement." *Classen Immunotherapies, Inc. v. Biogen IDEC*, 2012 WL 1963412, at *9 (D. Md. 2012), *adhered to on reconsideration*, 2012 WL 3264941 (D. Md. 2012). Specific intent to induce infringement may be through circumstantial evidence. *Vita-Mix Corp.,* 581 F.3d at 1328. Inducement can be found where the defendant takes steps to encourage direct infringement. *Takeda Pharms. U.S.A., Inc. v. West Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

In this case, LSI induced others to infringe the asserted patents by: (1) displaying the QR Code on the packaging and/or printed media associated with the Selected Products, and/or (2) including an invitation to anyone that saw the packaging of the Selected Products to "PLAY THE

13

FREE LEGO CITY MY CITY GAME ONLINE" which is displayed in close proximity to the QR Code on the packaging of, at least, some of the Selected Product.  Displaying the phrase "PLAY THE FREE LEGO CITY MY CITY GAME ONLINE" illustrates action taken by LSI to induce infringement.  In addition, Defendant LSI's continued selling of the allegedly infringing product, after being served with the complaint in this matter, also gives rise to an inference of a specific intent at this stage in the case.  *See, Paone*, 2015 WL 4988279, at *13.  Symbology's FAC, ¶¶ 55-57, 80-82, 105-107, 130-132Dkt. No. 22.

Moreover, LSI knew of the patents at least as early as February 9, 2017, when LSI was served with the complaint, copies of the asserted patents, and representative claim charts clearly addressing direct infringement of representative examples of the asserted claims.  Despite LSI's receipt and possession of this material, LSI continued displaying, offering for sale, and selling, Selected Products which displayed the QR Codes.  In addition, LSI continued to maintain the infrastructure for third parties to access information when the QR codes were detected and processed by the third parties.  By continuing to display, offer for sale, sell, and maintain the associated infrastructure, LSI knowingly induced infringement and had the specific intent to encourage others to infringe the patent.  At the very least, once LSI received the compliant, copies of the patents and the claim charts, LSI was willfully blind that it induced infringement and encourage others to infringe the asserted patents.  The Supreme Court has held that "a willfully blind defendant is one who that takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually know the critical facts." *Global-Tech Appliances*, 563 U.S. at 769.  Each of these factors also indicates that LSI knowingly induced infringement of the asserted patents.

3.   LSI's Customers That Detected and Processed the QR Codes Are Direct Infringers

LSI argues that Symbology has failed to allege that a third party directly infringes the

Asserted Patents.  LSI's Mem. at 14, Dkt. No. 17.  Symbology's FAC specifically adds a John Doe defendant who directly infringes the asserted claims by using a portable electronic device to detect and process a QR Code displayed on Selected Products and to view the resulting cumulative information.  Symbology's FAC, ¶¶ 53, 78, 103, 128, Dkt. No. 22.

## V. CONCLUSION

For the reasons identified above, this Court should flatly deny LSI's Motion to Dismiss. Alternatively, if this Court holds that any of the allegations contained in LSI's Motion to Dismiss has merit, this Court should permit Symbology to file a Second Amended Complaint to correct any perceived deficiencies identified by the Court.

DATED April 17, 2017.                          Respectfully submitted,


By:  */s/ Steven War*
Steven War (VSB # 45048)

**McNeely, Hare & War LLP**
5335 Wisconsin Ave, NW, Suite 440
Washington, DC  20015
Tel: (202) 536-5877
Fax: (202) 478-1813
e-mail: steve@miplaw.com
*ATTORNEY FOR PLAINTIFF Symbology*
*Innovations*

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on April 17, 2017, I have caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the District Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

<u>Dated:  April 17, 2017</u>                                      By: <u>*/s/ Steven War*</u>

                                                                                    Steven War