UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | |
| Plaintiff, | |
| v. | Civil No. 2:17-cv-86 |
| LEGO SYSTEMS, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In this patent infringement suit, two corporations hailing from distant states find themselves litigating in the Eastern District of Virginia. This sort of forum shopping in patent litigation has proliferated over the past thirty years. *See* Daniel Klerman & Greg Reilly, *Forum Selling*, 89 S. CAL. L. REV. 241, 247-48 (2016). This practice has subjected defendants to litigation in distant forums largely unrelated to the alleged infringement and has given a few federal district courts, including the Eastern District of Virginia, inordinate power over the interstate market for innovation.[1] *See id.* at 249-50, 280-81.

Two recent decisions, *TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017) and *In re Cray, Inc.*, --- F.3d ----, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017), have clarified that the permissible venues for patent litigation are narrower than has been allowed in recent practice, however. In the wake of these decisions, venue for this suit does not properly lie in the Eastern District of Virginia, and the interests of justice require that this action be transferred to the District of Connecticut pursuant to 28 U.S.C. § 1406(a).

---

[1] "If this was power, why did it taste like tedium?" GEORGE R.R. MARTIN, A STORM OF SWORDS 996 (Bantam 2013).

# I. BACKGROUND

Plaintiff Symbology Innovations, LLC ("Symbology") filed this suit against Defendant Lego Systems, Inc. ("Lego Systems") alleging patent infringement and seeking damages, attorneys' fees, costs, and further relief under 35 U.S.C. § 271. *See* Am. Compl. ¶ 1. A PACER search revealed that Symbology has filed approximately ninety such suits since 2015.[2] Despite the volume of litigation, a Westlaw search reveals that no reported or unreported decisions have been issued in any of these cases.

## A. Symbology's Patents

Symbology owns four patents (Patent Numbers 7,992,773, 8,424,752, 8,651,369, and 8,936,190), each titled "System and Method for Presenting Information about an Object on a Portable Electronic Device." *See* Am. Compl. ¶¶ 10-11, 15-16, 20-21, 25-26. The patents relate to quick response codes ("QR codes"). *See id.*

A QR code is an encoded image used to link printed material to digitally stored information. *See* 2 HARRY M. PHILO, JR., LAWYERS DESK REFERENCE § 9:33 (10th ed.). It functions as an elaborate bar code that "consists of black modules arranged in a square pattern on a white background." *Id.*; *see also* Figure 1.



**Figure 1**

To access information stored in the QR code, a consumer must have a QR code reader application ("app") installed on the consumer's smart phone. *See Styer v. Prof'l Med. Mgmt., Inc.*, 114 F. Supp. 3d 234, 236 (M.D. Pa. 2015). When presented with a QR code, the consumer opens the app, which activates the smartphone's camera to scan the QR code. *See* James E. Cabral et al., *Using Technology to Enhance Access to Justice*, 26 HARV. J.L. & TECH. 241, 273-

---

[2] This figure may be slightly inflated, as intra-district inter-divisional transfers can cause one case to be assigned multiple docket numbers.

74 (2012). The app then processes the QR code, decodes its message, and uses the encoded URL to access the online content sought by the consumer. *Id.*

Symbology's infringement claims concern a method for reading QR codes encoded with URLs.[3] *See* Am. Compl. ¶¶ 14, 19, 24, 29. The patents purport to cover particular methods for using a digital device to capture and process a QR code and using the decoded URL to access the associated website. *See id.*

## B.   Lego Systems' Business and Contacts with the Forum

Lego Systems is a Danish company incorporated in Delaware and headquartered in Enfield, Connecticut. Am. Compl. ¶ 3. Lego Systems creates and sells the popular Lego brand construction toys. *See* 1st Quaglia Decl. ¶ 3 (ECF No. 31-1); *see also* Nielson Decl. ¶ 3 (ECF No. 31-2). Lego toys are manufactured exclusively outside of the Commonwealth of Virginia. *See* 1st Quaglia Decl. ¶ 3. Lego Systems designs advertisements and packaging for its American products at its headquarters in Billund, Denmark and in Enfield, Connecticut. *See* Am. Comp. ¶ 37; *see also* 1st Quaglia Decl. ¶ 4.

Some of Lego Systems' product packaging features QR codes. *See, e.g.*, Am. Compl. ¶¶ 30, 52. Lego Systems does not make, generate, or otherwise create QR codes, nor does it make or offer for sale any software that detects and processes QR codes. 1st Quaglia Decl. ¶¶ 6-7. To generate, detect, and process QR codes, consumers must use third-party software. *Id.* ¶ 8. Symbology alleges that, by featuring QR codes on its boxes, Lego Systems induces shoppers to infringe on its patents. *See id.* Symbology also alleges that Lego Systems directly infringed on its patents by using an app while internally testing the QR codes. *See id.*

---

[3] For example, scanning the QR code depicted in Figure 1 leads to the Eastern District of Virginia's website. *See* Figure 1.

3

Although headquartered in Denmark and Connecticut, Lego Systems has several contacts with the Eastern District of Virginia. The company derives revenue from products sold in this District, holds promotional events here, is registered with the Commonwealth as a foreign corporation, and has a registered agent to accept service of process. *See* Supp. Resp. at 4; *see also* Pl.'s Exh. 2 (ECF No. 21-2). Symbology alleges that Lego Systems directly infringes and induces consumers to infringe on its patents in this District. *See* Am. Compl. ¶ 7.

Lego Systems operates no retail stores in this District (or anywhere else). *See* 1st Quaglia Decl. ¶ 10. A subsidiary, Lego Brand Retail, Inc., operates Lego Store locations in at least thirty states, including three stores in Virginia. *Id.* Lego Systems and Lego Brand Retail are separate entities with separate corporate officers, records, finances, and assets. *See* Nielsen Decl. ¶ 4. They maintain separate general ledgers and prepare their own distinct financial reports. *See id.* ¶ 5. The companies do not hold joint assets. *See id.*

### C.    Procedural History

On January 3, 2017, Symbology filed five patent infringement lawsuits in the Eastern District of Virginia. *See* Civil Action Nos. 2:17-cv-1, 2:17-cv-2, 2:17-cv-84, 2:17-cv-85, 2:17-cv-86. Only the instant suit remains pending. Originally filed in the Court's Richmond Division, this case was transferred to the Norfolk Division when the five suits were consolidated before the undersigned. *See* Feb. 8, 2017 Transfer Order (ECF No. 5).

In lieu of filing a responsive pleading, Lego Systems moved to dismiss this action, challenging the sufficiency of Symbology's Complaint and, later, its Amended Complaint. *See* Mot. Dismiss Compl. (ECF No. 16); *see also* Mot. Dismiss Am. Compl. (ECF No. 25). Lego Systems also moved for a transfer of venue to the District of Connecticut under 28 U.S.C. § 1404(a), asserting the inconvenience of this forum. *See* Transfer Mot. (ECF No. 18).

When advancing those motions, Lego Systems reserved its right to challenge the propriety of venue in this District pending the outcome of a patent-venue case in which the United States Supreme Court had granted certiorari. Transfer Mem. at 4 n.6 (ECF No. 19) (citing *TC Heartland, LLC v. Kraft Food Brands Grp., LLC*, 137 S. Ct. 614 (2016) (granting cert.)). When reserving the issue, Lego Systems errantly cited the inapplicable general venue statute (28 U.S.C. § 1391(c)) instead of the patent venue statute (28 U.S.C. § 1400(b)) or the provision governing improper venue challenges (28 U.S.C. § 1406(a)). *See id.* However, the company also cited the Supreme Court's grant of certiorari in *TC Heartland*, clarifying that Lego Systems had intended to preserve the issue of improper venue pending the outcome of *TC Heartland v. Kraft Food Brands Group, LLC. See id.*

While Lego Systems' Rule 12(b)(6) Motion to Dismiss and § 1404(a) Motion to Transfer remained pending, the Supreme Court issued its decision in *TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017). The Supreme Court underscored that its 1957 decision interpreting the patent venue statute remains good law. *See id.* at 1517 (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957)). The Court also expressly reaffirmed *Fourco*'s holding "that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *Id.*

This Court then ordered supplemental briefing on the venue issues presented by this case. *See* Supp. Br. Order at 1-3 (ECF No. 30). The parties were directed to advance all transfer arguments in their new briefing. *Id.* at 1 n.1. The Court also invited Lego Systems to argue the propriety of venue after the Supreme Court's decision in *TC Heartland. See* Supp. Br. Order at 3. Lego Systems briefed the issue in its Supplemental Memorandum. *See* Supp. Mem. at 6-11 (ECF No. 31). After the Court granted Symbology additional time to revise its responsive brief,

the company filed an amended Supplemental Response, addressing both the improper venue and the inconvenient venue issues. *See* July 10, 2017 Min Order (ECF No. 33); *see also* Supp. Resp. (ECF No. 34). Lego Systems filed its Supplemental Reply. *See* Supp. Reply (ECF No. 35).

The issues are now fully developed and ripe for resolution by the Court.[4] At this juncture, Lego Systems challenges venue in this District as either improper or inconvenient. If venue is deemed improper, the company requests that the Court dismiss this action or transfer it to the United States District Court for the District of Connecticut. In the alternative, if venue is deemed proper but inconvenient, Lego Systems seeks a transfer. In response, Symbology argues that venue is proper, that transfer is unnecessary, and that if transfer is necessary, the appropriate transferee forum is the United States District Court for the District of Delaware.

## II.    LEGAL STANDARDS

In patent infringement suits, the law of the United States Court of Appeals for the Federal Circuit applies to matters unique to patent law. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc). However, when resolving procedural issues that are not unique to patent law, United States Court of Appeals for the Fourth Circuit law applies. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994).

Two generally applicable federal statutes permit district courts to transfer a case to another venue. A district court can transfer venue under 28 U.S.C § 1406(a), when the venue is improper, or under 28 U.S.C. § 1404(a), when the venue is proper but inconvenient.

### A.    Transfer Under § 1406(a) Based on Improper Venue

The Court considers Lego Systems' improper venue challenge as a motion under Federal Rule of Civil Procedure 12(b)(3), the proper mechanism for defendants seeking to raise an

---

[4] Lego Systems also filed a Notice of Supplemental Authority (ECF No. 36) regarding a recent Federal Circuit decision interpreting the patent venue statute. *See In re Cray, Inc.*, --- F.3d ----, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017).

6

objection to improper venue. *See W. Va. Chamber of Commerce v. Browner*, 166 F.3d 336, 1998 WL 827315, at *4 n.6 (4th Cir. 1998) (table).

When evaluating the propriety of venue under Rule 12(b)(3), a district court may examine facts outside the complaint to determine whether its venue is proper. *See* 14D CHARLES A. WRIGHT ET AL., 14D FEDERAL PRACTICE AND PROCEDURE § 3826 & n.30 (3d ed.) (collecting cases). Although a plaintiff need not plead venue, courts "consider to be true any well-pleaded allegations of the complaint that bear on venue, unless contradicted by defendant's affidavit evidence." *Id.* & nn.3-4, 28-29 (collecting cases). If the plaintiff presents countervailing affidavits, the court can hold an evidentiary hearing to assess credibility and make findings of fact. *See id.* & n.32; *accord Hancock v. AT&T Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

When a defendant challenges venue under Rule 12(b)(3) in the Fourth Circuit, the plaintiff bears the burden of establishing that venue is proper.[5] *See, e.g., Smithfield Packing Co. v. V. Suarez & Co.*, 857 F. Supp. 2d 581, 584 (E.D. Va. 2012); *Colonna's Shipyard, Inc. v. City of Key W.*, 735 F. Supp. 2d 414, 416 (E.D. Va. 2010); *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 550 (E.D. Va. 1996). The weight of this burden varies with the nature of the parties' dispute.

"To survive a motion to dismiss for improper venue when no evidentiary hearing is held, plaintiff need only make a *prima facie* showing of venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). "In assessing whether there has been a *prima facie* venue showing, [courts] view the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Mgmt. Co.*, 675

---

[5] Whether the burden to establish venue lies with the plaintiff or defendant appears to be a rousing debate among circuits and scholars alike. *See, e.g., Raytheon Co. v. Cray, Inc.*, --- F. Supp. 3d ----, 2017 WL 2813896, at *2 & nn.2-4 (E.D. Tex. June 29, 2017), *mandamus granted, order vacated sub nom. In re Cray, Inc.*, --- F.3d ----, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017). However, the Fourth Circuit's rule is well established. *See Bartholomew v. Va. Chiropractors Ass'n.*, 612 F.2d 812, 816 (4th Cir. 1979), *abrogated on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 125 n.6 (1982).

F.3d 355, 365-66 (4th Cir. 2012) (citations omitted). The plaintiff faces a heightened burden when an evidentiary hearing is held, and must prove venue by a preponderance of the evidence. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005); *see also* 14D FEDERAL PRACTICE AND PROCEDURE, *supra*, § 3826 & nn.32-33.

### B.     Transfer Under § 1404(a) Based on Inconvenient Venue

Alternatively, § 1404(a) "allows a court where venue is proper to transfer a case to a more convenient forum." *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999). A transfer under § 1406(a) is available when there is a legal defect in the initially selected forum. *Id.* Conversely, a § 1404(a) transfer is available only when the initial choice of forum is legally sound but the location's impracticality warrants a transfer to ensure the convenient and efficient resolution of the dispute. *See Martin v. Stokes*, 623 F.2d 469, 473-74 (6th Cir. 1980).

When seeking a convenience transfer under § 1404(a), "[t]he movant bears the burden of showing that transfer is proper." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007). Whether to transfer a case under § 1404(a) is committed to the discretion of the district court. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). "Rarely, however, is not never." *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003) (Posner, J.).

### III.     ANALYSIS

Lego Systems asks the Court to determine whether the Eastern District of Virginia is the proper venue for this suit. If venue does not lie, Lego Systems requests that the Court either transfer or dismiss this suit under § 1406(a). If venue lies here, the company requests that the Court nevertheless transfer this action to a more convenient forum under § 1404(a). Because

venue is improper, the Court will transfer this action under § 1406(a), and does not reach the § 1404(a) issue.

Because venue is a somewhat abstract concept, the Court begins with the building blocks of the doctrine. "Venue rules are concerned with the proper geographic location for litigation of a civil action." MOORE'S FEDERAL PRACTICE § 110.01[1] (3d ed.). These rules "seek to channel lawsuits to an appropriately convenient court, given the matters raised and the parties involved in an action." *Id.* (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185 (1979)). Because of this, "[v]enue is a waivable personal privilege of defendants." *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, --- F. Supp. 3d ----, 2017 WL 2556679, at *2 (E.D. Va. June 7, 2017) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).

"Federal venue statutes govern the venue of all civil actions brought in the federal district courts." *Id.* § 110.01[2]. The proper venue for any given federal lawsuit is determined by the general venue statute, a special venue statute, or the general venue statute supplemented by a special venue statute. *See id.* § 1101.01[3][a]-[b]. Intellectual property lawsuits are exclusively governed by special venue rules, found in 28 U.S.C. § 1400. *Id.* § 110.39. Subsection 1400(b) governs venue in patent infringement suits. *Id.* § 110.39[3].

## A. Whether an Improper Venue Challenge Is Waived

Although Symbology fails to raise the issue, the Court begins by considering whether Lego Systems waived the opportunity to challenge improper venue. Generally, defendants must challenge improper venue "either in a [Rule 12(b)(3)] motion . . . or as part of the responsive pleading, or they waive that defense." *Cobalt Boats*, 2017 WL 2556679, at *2. This use-it-or-lose-it rule requires a defendant to raise a venue defect in its first Rule 12(b) motion. *See* Fed. R. Civ. P. 12(g)-(h); *see also* 14D FEDERAL PRACTICE AND PROCEDURE, *supra*, § 3826 & n.21 (collecting cases). Lego Systems initially moved to dismiss under Rule 12(b)(6) and filed a

9

Motion to Transfer pursuant to § 1404(a). *See* Mot. Dismiss Am. Compl.; *see also* Mot. Transfer. At that time Lego Systems did not explicitly lodge an improper venue challenge under Rule 12(b)(3).

Waiver can be excused by, among other things, an intervening change in the law. *See Cobalt Boats*, 2017 WL 2556679, at *2. Although some courts consider the Supreme Court's recent decision in *TC Heartland* to constitute such a change,[6] this Court is not among them. *See id.* As noted above, in *TC Heartland*, the Supreme Court reaffirmed the continued vitality of its 1957 holding in *Fourco*. *See TC Heartland*, 137 S. Ct. at 1517 (citing *Fourco*, 353 U.S. 222). This abrogated the Federal Circuit's 1990 decision in *VE Holding Corp. v. Johnson Gas Appliance Co.*, which had held that *Fourco* was no longer good law. 917 F.2d 1574, 1584 (Fed. Cir. 1990). Because the Federal Circuit considers all patent appeals, for twenty-seven years lower courts nationwide had considered that holding to be binding. *See Cobalt Boats, LLC*, 2017 WL 2556679, at *2.

Despite this, TC Heartland did not constitute a change in the law because a lower court's erroneous interpretation of a statute has no effect on the law, only on people's perception of it. *See Bousley v. United States*, 523 U.S. 614, 625 (1998) (holding that legal advice based on circuit courts' erroneous but well-established interpretation of a statute was nonetheless "critically incorrect" legal advice).[7] Therefore, *TC Heartland* did not change the law—it

---

[6] *See, e.g., The Valspar Corp. v. PPG Indus., Inc.*, No. 16-cv-1429, 2017 WL 3382063, at *4 (D. Minn. Aug. 4, 2017); *Cutsforth, Inc. v. LEMM Liquidating Co.*, No. 12-cv-1200, 2017 WL 3381816, at *4 (D. Minn. Aug. 4, 2017); *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-cv-4219, 2017 WL 3307657, at *3 (N.D. Ga. Aug. 3, 2107); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-03828, 2017 WL 3130642, at *3-5 (D. Ariz. July 24, 2017).

[7] *See also, e.g., Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (holding that even if a Supreme Court precedent contains many "infirmities" and rests upon "wobbly, moth-eaten foundations," it remains the "Court's prerogative alone to overrule one of its precedents."); *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 & n.12 (1994) (holding that no change to the Supreme Court's interpretation of a federal statute has the force of law unless it is implemented through legislation.); *Rodriquez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989); *Mentor Graphics*

clarified that the law had not changed. *See id.*; *see also Cobalt Boats*, 2017 WL 2556679, at *2-4.

However, Lego Systems did not waive the issue; it expressly reserved the improper venue issue and the Court allowed Lego Systems to raise it in the supplemental briefing. *See* Supp. Mem. at 6-11; *see also* Supp. Br. Order at 3. The rule regarding waiver of the improper venue defense "must be viewed in light of the liberal pleading amendment policy expressed in Rule 15," which allows a party to amend his filings with leave of court. 5C FEDERAL PRACTICE AND PROCEDURE, *supra*, § 1390. Under Rule 15, courts freely allow amendment when justice so requires. Fed. R. Civ. P. 15(a)(2).

Allowing Lego Systems to supplement its motions ensured consideration of the venue issue under the appropriate statute and avoided an inequitable result. When the Supreme Court issued its opinion in *TC Heartland*, Lego Systems' pending Motion to Transfer sought relief based on the inconvenience of this forum pursuant to § 1404(a). Venue must be proper before a § 1404(a) transfer can be made. *See Martin v. Stokes*, 623 F.2d at 473-74; *see also HollyAnne Corp.*, 199 F.3d at 1307; 14D FEDERAL PRACTICE AND PROCEDURE, *supra*, § 3827 & n.14 (collecting cases).

Construing a waiver here would have left Lego Systems in a bind—the impropriety of this venue would have prevented a transfer based on inconvenience. *See Rivers*, 511 U.S. at 312 (holding that a Supreme Court pronouncement interpreting federal law must be given full retroactive effect in all open cases). The Court would have been unable to grant the Motion to

*Corp., v. Eve USA, Inc.*, --- F.3d ----, 2017 WL 3806141, at *6 (Fed. Cir. Sept. 1, 2017) ("We are bound by [Supreme Court] precedent."); *United States v. Sterling*, 724 F.3d 482, 502 (4th Cir. 2013) (holding that a decision of the Supreme Court "stands unless and until the Supreme Court itself overrules that [holding]"); *Manville Boiler Co., Inc. v. Columbia Boiler Co.*, 269 F.2d 600, 606-607 (4th Cir. 1959) (holding that lower courts "cannot change or modify [a] rule, for any possible reconsideration of its decisions is the province of the Supreme Court."). *Cf. Brown v. Allen*, 344 U.S. 443, 540 (U.S. 1953) (Jackson, J., concurring) (observing that the Supreme Court is "infallible only because [it is] final.").

Transfer under § 1404(a), and Lego Systems would be unable to obtain relief under § 1406(a). Despite entitlement to a transfer,[8] it would be unavailable. Under these circumstance, the equities excuse any waiver, and the Court turns to consideration of the merits of the improper venue challenge.

**B.**    **Venue in the Eastern District of Virginia Under § 1400(b)**

Section 1400(b) provides that patent infringement suits "may be brought" in either "the judicial district where the defendant resides," or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

"As applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation." *TC Heartland*, 137 S. Ct. at 1521 (alteration in original). It is undisputed that Lego Systems—an entity incorporated in Delaware—does not "reside" in this District. *See* Supp. Mem at 6; *see also* Supp. Resp. at 10. Therefore, venue only lies in the Eastern District of Virginia if the second clause of § 1400(b) is satisfied. This presents the Court with two questions: (1) whether Defendant Lego Systems committed acts of alleged infringement in this District and (2) whether Lego Systems has a regular and established place of business in this District.

**1.**    **Acts of Infringement in this District**

For proper venue to lie in this District, Lego Systems must have committed acts of infringement here. "Although [§1400(b)] uses the phrase 'act of infringement,' courts have 'consistently held that an allegation of infringement is itself sufficient to establish venue and [the] plaintiff is not required to demonstrate actual infringement by [the] defendant[].'" *Raytheon Co. v. Cray, Inc.*, --- F. Supp. 3d ----, 2017 WL 2813896, at *4 (E.D. Tex. June 29,

---

[8] The Court assumes without deciding that Lego Systems would otherwise have been entitled to the § 1404(a) transfer it sought.

2017), *mandamus granted, order vacated sub nom. In re Cray, Inc.*, --- F.3d ----, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017) (citation omitted) (alterations in original). "The acts of infringement required to support venue in a patent infringement action need not be acts of direct infringement, and venue does lie if the defendant only induced the infringement or contributed to the infringement" in the forum. *Gunter & Cooke, Inc. v. Southern Elec. Servs. Co.*, 256 F. Supp. 639, 648 (M.D.N.C. 1966), *aff'd*, 378 F.2d 60 (4th Cir. 1967).

The Amended Complaint alleges that, *inter alia*, employees of the three Virginia Lego Store locations have tested, detected, and processed QR codes imprinted on the company's advertisements and packaging. Am. Compl. ¶ 40. Although these allegations may be contested, they satisfy the "acts of infringement" requirement of § 1400(b).[9]

### 2. A Regular and Established Place of Business in This District

In addition to acts of infringement, Lego Systems must have a regular and established place of business here for proper venue to lie in this District. This issue is more complex, requiring careful consideration of § 1400(b)'s purpose and scope.

When applying the patent venue statute, courts construe its requirements strictly. *See Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961); *see also* 14D FEDERAL PRACTICE AND PROCEDURE, *supra*, § 3823. The statute's "scope can best be determined from an examination of the reasons for its enactment." *Stonite Prod. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942); *see also TC Heartland*, 137 S. Ct. at 1518; *In re Cray*, 2017 WL 4201535, at *5.

---

[9] Because the allegations of Paragraph 40 suffice, the Court declines to resolve whether the allegations in Paragraph 39 would also satisfy this standard. *See* Am. Compl. ¶ 39. Therefore, the Court does not have occasion to decide whether allegations in a complaint must always be credited when contradicted by a defendant's affidavit. Nor does the Court need to consider whether this standard would be satisfied by allegations of infringement in the forum that are implausible under the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Before the enactment of the special patent venue statute, patent cases were governed by the general venue rules set forth in the Judiciary Act of 1789. *See TC Heartland*, 137 S. Ct. at 1518. That statute "permitted a plaintiff to file suit in a federal district court if the defendant was 'an inhabitant' of that district or could be 'found' for service of process in that district." *Id.* (citing Act of Sept. 24, 1789, § 11, 1 Stat. 79). This allowed "the courts in the United States . . . [to] hold a defendant in any district where he chanced to be and was served with process." *Bowers v. Atl., G&P Co.*, 104 F. 887, 889 (C.C.S.D.N.Y. 1900).

"The abuses which this condition of affairs permitted were many and serious." *Id.* "There was not a foot of ground within the limits of the United States where an infringer was safe from process" and, therefore, subject to suit in the local federal court. *Id.* at 890. "A defendant residing in Maine and having a place of business and infringing at Boston could, under this construction, be sued in Maine, in Massachusetts, or, if he happened to be in Texas, or Oregon, he could be sued there." *Id.* at 889. "Many thoughtful minds conceived it to be an injustice that . . . when absent from their domiciles, defendants in patent suits could be attacked in districts where defense was difficult if not impossible." *Id.* at 890-91.

In 1897, "Congress adopted the predecessor to § 1400(b) to eliminate the 'abuses engendered' by previous venue provisions." *Schnell*, 365 U.S. at 262 (quoting *Stonite*, 315 U.S. at 563). Therefore, the patent venue statute is construed as "a restrictive measure, limiting [the] prior, broader venue." *Stonite*, 315 U.S. at 566-67.

The new statute retained the rule that venue would lie where the defendant was "an inhabitant" of the district, which was later restyled as the modern residence clause. *See TC Heartland*, 137 S. Ct. at 1518-19. However, in lieu of the old rule allowing venue wherever

defendant could be served, the new statute laid venue where the defendant committed acts of infringement and had a regular and established place of business. *See id.*

When crafting the "regular and established place of business" requirement, Congress sought to cure the ills created by the old service of process rule, which subjected defendants to venue based on their transitory presence in the forum.[10] *See In re Cray*, 2017 WL 4201535, at *5-6; *see also Bowers*, 104 F. at 889-90. The language was intended to limit patent venue to forums in which the defendant's presence is permanent. *See* 29 Cong. Rec. 1900 (1897).[11] This should be the primary guidepost for courts' analysis. *See In re Cray*, 2017 WL 4201535, at *5-6.

Symbology urges the Court to adopt the test set forth in *Raytheon Co. v. Cray, Inc.*, 2017 WL 2813896, at *10-14. The United States Court of Appeals for the Federal Circuit soundly rejected the *Raytheon* test in a recent decision. *See In re Cray*, 2017 WL 4201535, at *5, *9. In its decision, the appellate court sharply criticized *Raytheon*'s four-factor test as "not sufficiently tethered to [the] statutory language and thus it fails to inform each of the necessary requirements of the statute." *Id.* at *5. Therefore, this Court will not apply the *Raytheon* test.[12]

Section 1400(b)'s "regular and established place of business" clause imposes three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and

---

[10] Because service of process in the forum is one of the bases upon which personal jurisdiction can be obtained over a defendant, the rule of *VE Holding* allowed even broader venue than the rule that § 1400(b) was designed to correct.

[11] During floor debate the bill's author stated: "The main purpose of the bill is to [lay venue] where a permanent agency transacting the business is located, and that business is engaged in the infringement of the patent rights . . . . Isolated cases of infringement would not confer [venue], but only where a permanent agency is established." *Id.* (remarks of Representative Lacey).

[12] The Federal Circuit's ruling in *In re Cray* confirmed this Court's existing disinclination to follow *Raytheon*. The *Raytheon* decision neither addressed nor sought to effectuate any of the existing interpretive guidance regarding § 1400(b). *See id.*, *passim* (omitting discussion of § 1400(b)'s purpose, the Supreme Court's decisions in *Stonite* and *Schnell*, and the rule that § 1400(b) should be strictly construed). Moreover, it ignored both the statutory language and the statutory purpose, violating the "cardinal rule of statutory construction [which is] to effectuate legislative intent . . . ." 73 Am. Jur. 2d *Statutes* § 60 (2016 update).

In practice, the *Raytheon* test rendered § 1400(b) a nullity. This might have been by design. *See* Daniel Klerman & Greg Reilly, *Forum Selling*, 89 S. Cal. L. Rev. 241, 247-70 (2016) (discussing the Eastern District of Texas's attempts to attract and keep patent cases, including by denying motions to transfer).

established place of business; and (3) it must be the place of the defendant. *In re Cray*, 2017 WL 4201535, at *4. "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.*

When applying this test, "[c]ourts should be mindful of [§ 1400(b)'s] history . . . and be careful not to conflate showings that may be sufficient for other purposes . . . with the necessary showing to establish proper venue in patent cases." *Id.* at *5. The test is more demanding than the minimum contacts test applied to personal jurisdiction. *See id.*; *see also Fieldcrest Mills, Inc. v. Mohasco Corp.*, 442 F. Supp. 424, 430 (M.D.N.C. 1977). The "regular" and "established" qualifiers also require more than merely "doing business" within the forum. *See In re Cray*, 2017 WL 4201535, at *5-6; *accord Manville Boiler Co., Inc. v. Columbia Boiler Co.*, 269 F.2d 600, 606-607 (4th Cir. 1959); *OMI Intern. Corp. v. MacDermid, Inc.*, 648 F. Supp. 1012, 1015 (M.D.N.C. 1986). This precludes subjecting a company to venue on the basis of an irregular or unestablished business presence in the forum. *See In re Cray*, 2017 WL 4201535, at *5-6.

Turning to this case, Symbology points to several facts in an attempt to demonstrate that Lego Systems has a regular and established place of business in this District. *See* Supp. Resp. at 4, 15-16. Symbology observes that the company derives revenue from products sold here, holds promotional events, is registered with the Commonwealth as a foreign corporation, and has an appointed agent to accept service of process. *See* Supp. Resp. at 4; *see also* Pl.'s Exh. 2 (ECF No. 21-2). Although Lego Systems operates no retail stores in this District (or anywhere else), its subsidiary Lego Brand Retail has three stores here. *See id.*; *see also* 1st Quaglia Decl. ¶ 10.

Symbology notes that Lego Systems derives revenue from the District because toys that the company designs and manufactures are sold here. *See id.* This fact may be relevant to whether Lego Systems is subject to personal jurisdiction in this District. However, the Court is

mindful that it should not conflate these issues. *See In re Cray*, 2017 WL 4201535, at *5. Revenue derived from the forum has no bearing on whether § 1400(b)'s requirements are met. *See id.* at *4.

Symbology also observes that Lego Systems is registered as a foreign corporation with the Commonwealth of Virginia, and has appointed a registered agent to accept service of process in Virginia. *See id.*; *see also* Pl.'s Exh. 2 (ECF No. 21-2). These facts fail to support a finding that venue is proper under § 1400(b). Neither fact has any bearing on whether Lego Systems maintains a physical place within the District. *See In re Cray*, 2017 WL 4201535, at *4. Consideration of the appointed agent is especially inappropriate because the patent venue statute was intended to eliminate the abuses engendered by subjecting defendants to suit wherever they could be served. *See Schnell*, 365 U.S. at 262; *see also Bowers*, 104 F. at 889-91. Lego Systems' registration as a foreign corporation has no bearing on the Court's venue analysis.

Symbology also notes that Lego Systems hosts various events throughout the year in Virginia. *See* Supp. Resp. at 16; *see also* Pl.'s Exh. 2. A defendant's representations that it has a place of business in the forum are relevant to whether the defendant has a regular and established place of business there. *See In re Cray*, 2017 WL 4201535, at *6. Lego Systems' representations concerned transitory promotional events in this District. However, transitory promotional events do not suggest that Lego Systems maintained a physical place of business here.

The three Lego Stores in this District are owned and operated by Lego Brand Retail, a separate corporate entity from Lego Systems. *See* 1st Qaglia Decl. ¶ 10; *see also* Nielsen Decl. ¶ 6. If these stores are imputable to Lego Systems, they would qualify as its regular and established places of business in this District.

For the Lego Stores to serve as the "regular and established place of business" permitting venue in this District, Lego Systems and Lego Brand Retail must lack formal corporate separateness. This is a high standard, as one leading treatise explains:

> when separate, but closely related, corporations are involved . . . the rule is similar to that applied for purposes of service of process. So long as a formal separation of the entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other. On the other hand, if the corporations disregard their separateness and act as a single enterprise, they may be treated as one for purposes of venue.

FEDERAL PRACTICE AND PROCEDURE, *supra*, § 3823 & nn.24-26 (footnotes omitted).

In *Cannon Manufacturing Co. v. Cudahy Packing Co.*, the Supreme Court considered whether a corporation was "doing business" in North Carolina because of a subsidiary's presence there. 267 U.S. 333, 334 (1925) (Brandeis, J.). The Supreme Court held that even where the parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in the forum cannot be imputed to the parent company so long as they maintain formal corporate separateness. *See id.* at 335. Under *Cannon*,

> where the parent and subsidiary maintain separate bank accounts, submit separate tax returns, file separate financial statements, and meticulously charge each other for any services rendered, the corporations will probably be said to be separate entities. The courts will also be more likely to find separate corporate entities if the officers and directors of the parent and the subsidiary are not all the same.

Note, *Doing Business as a Test of Venue and Jurisdiction Over Foreign Corporations in the Federal Courts*, 56 COLUM. L. REV. 394, 410 & nn.102-103 (1956) (collecting cases).

The *Cannon* test applies to § 1400(b) because "[a court] could hardly find that [a company] had a regular and established place of business in Virginia if [the court] could not hold that it was doing business at all in Virginia." *Manville Boiler Co., Inc. v. Columbia Boiler Co.*,

269 F.2d 600, 606-607 (4th Cir. 1959). The *Cannon* rule has never been overturned, and retains force in the § 1400(b) context.[13]

Lego Systems and Lego Brand Retail are distinct corporate entities with separate finances, assets, officers, and records. Nielsen Decl. ¶ 4. They keep separate general ledgers, prepare their own distinct financial reports, and have separate assets. *Id.* ¶ 5. The facts of this case resemble *Shapiro v. Ford Motor Co.*, in which the district court held that:

> even where there is a unitary business purpose to manufacture and sell to ultimate consumers, if the operations of the two or more functional components of that unitary business purpose are themselves vested in formally separate entities, then venue over one under § 1400(b) cannot be gained by treating the regular and established place of business of the other as the office of the former.

*Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 357 (D. Md. 1973) (citing *Manville Boiler Co. v. Columbia Boiler Co.*, 269 F.2d 600 (4th Cir. 1959)).

Here, as in *Shapiro* and *Cannon*, the parent company produces goods that are sold by the subsidiary. The parent-subsidiary connection here is even more attenuated because, unlike those cases, Lego Brand Retail is not the exclusive distributor for Legos Systems' products in Virginia. Legos are sold by a wide variety of retailers in this District and across the country.[14]

Symbology argues that the foregoing cases are outdated, and that the Court should apply *Raytheon* to reflect "the ever-changing nature of today's business and commercial methods" and the Internet's profound effect on business. Supp. Resp. at 15 (quoting *Raytheon*, 2017 WL 2813896 at *11). The problems with this argument are twofold. First, the Federal Circuit has rejected the *Raytheon* test. *See in re Cray*, 2017 WL 4201535, at *5. Second, "the venue

---

[13] *Cannon* did not arise in the venue context; rather the Court was considering the question of obtaining personal jurisdiction by serving a corporation in the forum state. *See Cannon Mfg.*, 267 U.S. at 334. At the time, "[a] foreign corporation [was] amenable to process . . . only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there." *Phila. & Reading Ry. Co. v. McKibbin*, 243 U.S. 264, 265 (1917).

[14] Symbology never alleges or argues that the corporate veil between Lego Systems and Lego Brand Retail should be pierced. *See generally* Am. Compl.; Supp. Resp.

question is controlled by *Cannon* . . . . If the rule of that case unduly emphasizes the form in which related corporations cast their intercorporate transactions and minimizes the control exercised by the one of the other, the rule, nevertheless, is well established." *Manville Boiler Co.*, 269 F.2d at 606 (citations omitted). This Court "cannot change or modify the rule, for any possible reconsideration of its decisions is the province of the Supreme Court." *Id.* Therefore, the three Lego Store locations in this District are not imputable to Lego Systems.

In sum, Lego Systems lacks a regular and established place of business in this District. Lego Brand Retail's three Lego Store locations cannot be attributed to Lego Systems because formal corporate separateness is maintained. Therefore, Symbology has failed to adequately demonstrate that Lego Systems has a regular and established place of business in this District, and venue does not lie here under the second clause of § 1400(b).

### C. Whether to Order Venue-Specific Discovery

Perhaps recognizing the weakness of its position, Symbology argues that the Court should order venue-specific discovery before resolving the issue. *See* Supp. Resp. at 11-12. Lego Systems counters that Symbology's request is unjustified and that the company has failed to provide a factual basis in support of its discovery request. *See* Supp. Reply at 13. In addition, Lego Systems urges the Court to consider the efficiency interests at stake before ordering costly venue-specific discovery. *See id.*

Under the Federal Rules of Civil Procedure, discovery is broad in scope and freely permitted. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003). Whether to order venue-specific discovery lies within the broad discretion of the district court. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, n.13 (1978); *see also Carefirst of*

*Md.*, 334 F.3d at 402.[15] The Fourth Circuit has explained that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md.*, 334 F.3d at 402-03.[16] A district court acted within its discretion by denying discovery on a jurisdictional issue when the plaintiff had failed to offer a concrete proffer, there was no indication of fraud or misconduct in the defendant's affidavits, and there was no reason to believe that the additional information sought would alter the outcome. *Id.* at 403.

Here, Symbology proffers few facts regarding Lego Systems' supposed place of business within the forum. The facts presented—revenue, corporate registration, an agent for service of process, and periodic promotional events—fail to suggest any continuous presence here. *See* Supp. Resp. at 15-16. These facts also fail to suggest that discovery would show that Lego Systems has a regular and established place of business in this forum. Symbology has not proffered any facts suggesting that the corporate separateness between Lego Systems and Lego Brand Retail is a mere fiction. There is no indication of impropriety in Lego Systems' three sworn declarations. *See, e.g.*, 1st Quaglia Decl.; Nielsen Decl.; 2d Quaglia Decl. Finally, Symbology fails to identify any source of information or fact that would change the Court's analysis of whether Lego Systems has a regular and established place of business in this District.

---

[15] Although this is a patent case, Fourth Circuit law applies to procedural issues that are not unique to patent law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). The Court could not locate a Fourth Circuit case setting forth the standard for evaluating a plaintiff's request for venue-specific discovery (or a Federal Circuit case, for that matter). In absence of any such guidance, the Court applies the Fourth Circuit's jurisdictional-discovery standard.

[16] *See also McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (holding that the district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," the plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (upholding district court's refusal to allow the plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions").

Moreover, allowing plaintiffs to file suit in far-flung districts and then demand discovery on the issue of venue would recreate the inconvenience that venue rules are intended to prevent—the defendant would still be required to litigate in an inconvenient district. This unfairness is exacerbated when, as here, the parties essentially have no connection to the plaintiff's chosen forum. *Cf. JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) (holding that a plaintiff's choice of venue is given substantial weight unless the plaintiff selects a foreign forum or one with little or no relation to the plaintiff's claim). Lacking any threshold showing, the Court declines to order discovery that would allow Symbology to undertake a "fishing expedition." *See Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."); *see also McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983). Symbology's request for venue-specific discovery is denied because the company has not offered a basis to believe discovery will yield information supporting venue under any factor.

## D. Whether to Grant Leave to Amend the Operative Complaint

Relatedly, Symbology requests leave to file a second amended complaint, seeking an opportunity to allege facts that might satisfy the *Raytheon* four-factor test. Supp. Resp. at 20. The problems with this request are many. Two stand out. First, the proposed amendment would be futile, because the Federal Circuit and this Court squarely reject the *Raytheon* test. *See In re Cray*, 2017 WL 4201535, at *5. Second, amending its complaint to plead venue is unnecessary. If Symbology had factual support for venue in this District, the company had opportunity to present it by affidavit or by exhibit when opposing Lego System's motions. *See* 14D FEDERAL

PRACTICE AND PROCEDURE, *supra*, § 3826 & nn.3-4, 28-32. Symbology's request to amend the complaint is superfluous and, accordingly, denied.

### E.    Disposition of this Suit Under § 1406(a)

Because Symbology has not demonstrated that venue properly lies in this District or that it is entitled to discovery, this case must either be dismissed or transferred pursuant to § 1406(a). Lego Systems requests that if the Court elects to transfer, it should transfer it to the District of Connecticut. Supp. Br. at 6. Symbology requests that if transfer is warranted, this case be sent to the District of Delaware—Lego Systems' state of incorporation (and a popular choice of forum among patent plaintiffs). *See* Supp. Resp. at 2; *see also* J. Jonas Anderson, *Court Competition for Patent Cases*, 163 U. PA. L. REV. 631, 654-56 (2015) (explaining that the District of Delaware is a popular forum among patent plaintiffs).

#### 1.    Whether to Transfer or Dismiss

The Court must first decide whether to transfer the case. Federal law empowers the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." § 1406(a). When deciding whether to transfer or dismiss, "district courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants." *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 754 (E.D. Va. 2012) (internal quotation marks omitted); *see also* 14D FEDERAL PRACTICE AND PROCEDURE, *supra*, § 3827.

The Court harbors concerns regarding whether Symbology had a good-faith basis for its venue allegations. However, there are no grounds upon which the Court could determine that Symbology selected the Eastern District of Virginia in bad faith or to harass Lego Systems. Rather, Symbology chose this venue in good faith reliance on the Federal Circuit's decision in

*VE Holding* and twenty-seven years of practice in accordance with that case. Therefore, in the interests of justice, the Court elects to transfer, rather than dismiss, this suit.

## 2. The Appropriate Transferee Court

Having decided to transfer rather than dismiss this action, the remaining issue for the Court is where it should be transferred. Lego Systems requests a transfer to the District of Connecticut, and Symbology prefers the District of Delaware. *See* Supp. Resp. at 2; *see also* Supp. Reply at 14-15.

When a plaintiff files suit in an improper venue, the court may transfer the action "to any district in which it could have been brought." 28 U.S.C. § 1406(a). To determine where a case "could have been brought," the "movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d. 627, 630 (E.D. Va. 2003).

### a. Proper Venue in the District of Connecticut

This case can be transferred to the District of Connecticut only if venue exists there pursuant to 28 U.S.C. § 1400(b). Because Lego Systems resides in Delaware for purposes of § 1400(b), venue lies in Connecticut only if Lego Systems committed acts of alleged infringement and has a regular and established place of business there.

Symbology contends that the Amended Complaint alleges no acts of infringement in Connecticut.[17] *See* Supp. Resp. at 20. This is plainly untrue. *See, e.g.*, Am. Compl. ¶ 39. Symbology also contends (somewhat more plausibly) that because Lego Systems denies those acts of direct infringement, venue does not lie in the District of Connecticut. *See* Supp. Resp. at

---

[17] Symbology has attempted to tailor its allegations to limit venue to this forum. However, when determining venue courts are not limited to the pleadings. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-66 (4th Cir. 2012). Any assertion that the infringement alleged by Symbology occurred only in Virginia strains credulity because Lego products are sold nationwide. There are two Lego Stores in Connecticut, and Lego products are likely sold there, packaged in boxes similar to those used in this District. *See Find a Lego Store*, LEGO.COM, https://www.lego.com/en-us/stores/stores (last visited Sept. 5, 2017).

12-13. However, as acknowledged, a complaint's well-pled factual allegation of infringement may satisfy this requirement regardless of this type of factual dispute. *See Funnelcap, Inc. v. Orion Indus., Inc.*, 392 F. Supp. 938, 943 (D. Del. 1975). Therefore, Symbology's allegations of infringement satisfy the "acts of infringement" requirement of § 1400(b).

Second, Lego Systems must have a regular and established place of business in Connecticut. The parties agree that Lego Systems has its principal place of business in the District of Connecticut, where its United States headquarters is located. *See* Am. Compl. ¶ 3. The company's headquarters qualifies as a "regular and established place of business." Therefore, venue is proper in the District of Connecticut.

### b. Personal Jurisdiction Exists in the District of Connecticut

The Connecticut district court must also have personal jurisdiction over Lego Systems. A corporation is subject to general personal jurisdiction where it has "affiliations with the State [that] are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State," such as the corporation's place of incorporation or principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Lego Systems is "at home" in Connecticut, where its United States headquarters are located. Therefore, personal jurisdiction exists in the District of Connecticut.

### c. Symbology's Request for Transfer to the District of Delaware

Symbology counters that the District of Delaware is a better choice for transfer, arguing that after *TC Heartland*, venue is certain only in the alleged infringer's state of incorporation. *See* Supp. Resp. at 19. The District of Delaware would be a valid choice. As Lego Systems' state of incorporation, the company "resides" in Delaware for purposes of § 1400(b), and is subject to general personal jurisdiction in that state. *See TC Heartland*, 137 S. Ct. at 1517 (holding that for purposes of § 1400(b), a corporation resides in its state of incorporation); *see*

*also BNSF Ry. Co.*, 137 S. Ct. at 1558 (holding that corporations are subject to general personal jurisdiction in their state of incorporation).

Symbology exercised its prerogative as plaintiff to commence suit in this District. *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) ("The *initial* choice of forum, from among those possible under the law, is a privilege given to the plaintiff.") (emphasis added). Allowing Symbology to interject its second-choice venue into Lego Systems' Motion to Transfer would encourage filing suit in improper venues based on tenuous connections to the forum, with the confidence that the plaintiff's second-choice forum could be obtained should a defendant secure a hard-fought transfer. This would introduce substantial inefficiency into a doctrine intended to ensure the convenient resolution of controversies, and would over-extend the preference given to the plaintiff's choice of forum. Having chosen an improper venue in the first instance, Symbology's attempt to tap its ruby slippers and make another wish is uncompelling.

In sum, because it is in the interests of justice for Symbology to have its day in court, and no countervailing reasons warrant denying transfer, the Court transfers this case to the District of Connecticut. Although the District of Connecticut is not the only permissible venue to which this action could be transferred, it is the one requested by Lego Systems.

## IV. CONCLUSION

For the reasons stated herein, Lego Systems' Motions (ECF Nos. 16, 18, 25) are **GRANTED IN PART** in accordance with the analysis and rulings provided herein.

Pursuant to 28 U.S.C. § 1406(a), the Clerk of Court shall **TRANSFER** this case to the United States District Court for the District of Connecticut.

**IT IS SO ORDERED.**

_____
/s/
Arenda L. Wright Allen
United States District Judge

September 26, 2017
Norfolk, Virginia